Case number 18-3026, United States of America v. James Duckett, appellant. Ms. Taramina for the appellant, Ms. Gabriel for the advocate. Good morning. Good morning. May it please the Court. Rosanna Taramina from the Federal Public Defender's Office for Mr. Duckett. I'd like to reserve two minutes for rebuttal. The District Court in this case committed three procedural errors that resulted in a substantively unreasonable sentence. Whether viewed cumulatively or individually, the errors warrant resentencing. The first error is a purely legal one, and it's an error that was not plain at the time of sentencing. It is now plain, however, that the District Court applied the wrong criminal history category and thus the wrong guidelines range in sentencing Mr. Duckett. Under the Supreme Court's opinions in Molina-Martinez and Rosales-Morales, as well as this Court's consistent prior opinions, Mr. Duckett is entitled to resentencing. The guideline that applies in this case is 7B1.4, and it directs District Courts in the text of the guideline itself to use the criminal history category applicable at the time the defendant originally was sentenced to a term of supervised release. Even if you're right on that, what difference does it make in terms of the guideline ranges? The guideline range changes from, in a criminal history category 5, it's 7 to 13 months, and in a criminal history category 6, it's 8 to 14 months. So one month, and you have a District Court judge who, this is the third revocation hearing, right? Yes. And who seems to be saying, I'm done with revocation, supervisory release, I want to give him the statutory max, which is what she did. She did. So how does one month on either end make a difference at all? First, the Court itself did not mention that 24 months was the statutory max. So she didn't say, regardless of the guidelines, I would, I'm giving you 24 months, they're irrelevant. That's a different issue of whether she articulated the reasons for upward departure. Oh, certainly. We'll get to that. But I thought you were talking about the substantive reasonableness. Yes. Oh, no, no. Well, with procedural, with a procedural error, the defendant does not have to demonstrate substantive unreasonableness. I do have a substantive unreasonableness claim that I do think relates to the three procedural errors. The category was clearly harmless error, a clear harmless error. They counted an attempt to distribute cocaine as a predicate offense for career offender status, right? Correct. That was wrong, right? Right. But waiting in the wings, waiting to be counted, are all these other offenses the defendant committed, including a murder at Lewisburg that wasn't counted, and including the armed robbery at which he was convicted. Either one of those would add up to a career offender and put him right back in the same category that he was in. Okay. So the uncharged murder, which we don't have any facts underlying. We don't. It was not. It was uncharged. He was unrepresented. We know nothing about it. So it would never count to qualify as any criminal history. But the presumption report said he was convicted of killing, assault with serious injury, and possessing a dangerous weapon. That he was the one that he was not charged for, Your Honor? No. And the uncharged, the uncharged. That's why he was moved to the security prison in Colorado. Right. What about the other attempted murder? That was a BOP conviction. So that doesn't count as a federal conviction. You cannot receive criminal history points. What about the 1984 armed robbery? Right. So the 1984 armed robbery was specifically passed over in the District of Colorado. The District of Colorado did not count the D.C. armed robbery as a qualifying offense. They didn't need to. They already counted the attempted distribution of cocaine. But it skipped over, it skipped over the 1984 conviction, suggesting that it wouldn't have counted it. And I will say that we do have the residual clause issue. It would only have potentially qualified under that. We can assume because it skipped, the court skipped over that conviction that it actually did reject the application. But I should also say. Why? What's the basis for rejecting? Well, in this court, the basis for rejecting it is the basis articulated in Johnson, that the risk articulated in the residual clause is unworkable, and that any of the case law that has interpreted that is unworkable. So. How does that survive with Beckles? So Beckles was a 2255 case. In that case, the appellant or the petitioner, because he was a 2255 petitioner, had to show a constitutional level injury in order to receive some sort of remedy in that case. Here, we still have to calculate under 3553A the correct guidelines range. So we don't have to show a constitutional level vagueness error. Beckles doesn't say that you could actually properly apply the residual clause. That would be completely inconsistent with what the reasoning of Johnson. But it seems like it would be inconsistent with Beckles to say that you can't apply the residual clause under the guidelines. Not that you. What all Beckles said, and it was very limited, was that the void for vagueness constitutional doctrine does not apply to the guidelines. It did not say that Johnson or that the residual clause has a meaning outside of the criticized meaning that Johnson went through. If Johnson recognized that the residual clause is, like I said, unworkable and essentially meaningless, it's a legal nullity, then how it could be applied correctly and how a court could review that application, I don't know how that could be. The thing here is, absolutely. We were talking about the murder that was committed at Lewisburg, right? And you said it was not charged. In the supplemental appendix, would you go to page 11, the sentence report? Sure, yes. Yes, Your Honor. Are you there? Yes. Okay. Take a look at paragraph 55. Yes. It says, A review of BOP records reflect that on January 8, 1994, the defendant stabbed another inmate to death at Lewisburg. He was found guilty of killing, assault with serious injury and possessing a dangerous weapon. Where do you get the idea it was never charged? It's because it's not listed in his criminal history. It was an administrative – that's an administrative finding of guilt in the BOP. There is no – it's not in his criminal history. If it were charged federally or a state, it would be listed in his criminal history, and then criminal history points would have been assigned to it. But the reason it is only – it is only under supervision adjustment, essentially, is because it is an administrative finding, which does not have the same – Administrative finding of guilty? Yes. In the BOP. All right. So he's not represented by counsel. Again, we don't know anything. It could – there could have been a self-defense defense. We know nothing about that. But in any event, the court couldn't – We know he killed somebody. We know that someone died, yes. Yes. But we don't – we know that that couldn't have been counted. The court could use that as a variance. It could use it – and we don't know that this was actually before the court, but the court could use it as a variance, but it wouldn't affect what his criminal history category would be. I – so – Could you speak to your argument about the upward departure? It was – whether there was an adequate explanation for why the district court provided an upward departure from the guidelines. Yes. Under this court's most – well, the line of precedence in Ray Seale's case, both Browns and Kigbey, the court's – the court's explanation did not – the court did not explain why the guidelines range did – and his criminal history category, which was wrong, did not account for the conduct in this case. I think especially in light of this criminal history issue, where the court – there are guidelines, provisions that would allow the court to vary and instruct the court how to vary. And I think that is – that is very important. Could you compare and contrast what took place in Brown and this case? Brown is – as I understand, is our most recent precedent. Yes. In Brown – in Brown, the court – the court – there – it's not – and in fact, in all of those cases, it's not that the court didn't say – didn't give any explanation. There was an explanation given in Brown, and in fact the court said, I don't believe that the – and in several of the cases the court said, I don't believe that the guidelines are sufficient, but then didn't explain why they weren't sufficient. And in Brown, the court said, in addition to explaining why they – the case falls out of the mine run, which is what the guidelines represent, that you also have to explain the degree of the variance. Would you agree – was this the fourth time that this particular district judge had the defendant before her? No. It was the third time. Third time. Okay. And we have transcripts of the prior proceedings? Yes. We have transcripts of the prior – yes. Would you agree that the – that in reading the sentencing that occurred, that you're challenging, that we should read it in light of the prior proceedings and what the judge said during those proceedings? I think that what cannot be transferred is the judge's consideration of the treatment and training, which I think is a significant error here that infected everything. Well, it's not clear. We don't know, right? And – well, I think it is clear. In which part do we not know, Your Honor? Well, I mean, you're saying she erred in relying on a mistaken fact about the post-treatment conviction. Yes. And I'm suggesting to you the record isn't clear about that. And this is a – That she didn't – the record is ambiguous as to her reliance? Yeah, to what she was saying. What she was saying. I think that it is clear as to what she was saying, and I think that – This plain error review on that? This – no, with respect to this, this is the clear error review because it's a mistake of fact. Right. So I believe it's clear error review. And in light of that, and even under plain error review in the sentencing context, if you do think it is ambiguous, I think that there is evidence by the court's statement, which I'll get to, but if you do think it's ambiguous, the correct remedy would be to remand and have the judge say whether or not she did rely on it or didn't or was under an incorrect impression. I want to go back to the questions about Brown. Sure. You were explaining Brown. Would you compare what the district court judge did here with what was done in Brown? Because in Brown we found that insufficient, right? Right. There was an inadequate explanation for an upward departure. Yes. How is this case like Brown or unlike Brown? Well, in Brown – well, I don't think that the court in this case didn't acknowledge or didn't discuss why the guidelines themselves were insufficient to sentence or to justify a 24-month sentence and what the degree is. Why would the guidelines – why would she say they're so insufficient that we have to vary up to 24 months? Remind me. Was there any effort to – was there even any statement that there was being – that there was a departure, an upward departure from the guidelines? Was there any reference made to the guidelines in the – There's two references to the guidelines in the district court sentencing. At the very beginning, she says, I'm beginning my analysis with the guidelines. It's at the very beginning. I'm sure I'm paraphrasing. And then at the very end, she says, I'm basing my decision on the 3553A factors and my consultation with Chapter 7 policy statements. So she – at the very beginning and at the very end of her analysis, she does say that she's consulted and relied on the guidelines. So – and as I was saying earlier, she does not say, I'm just going to give you the statutory maximum, which speaks to whether or not she was just – she just decided to vary 10 months above the high end of the guidelines range. She didn't say, I'm just – I am done here. I'm – this is – I'm just throwing – blocking away and throwing the key. If – to the extent that she did that, though, I do want to hearken back to a misimpression about the treatment. Because if the district court thought, I have done everything I could for you, I've done everything for you, and you are still back in front of me, then obviously it's a much more reasonable thing to do than if she understood – if she understood that actually the probation office wasn't doing anything that she had found necessary to the public – public – sorry. Let me check if my colleagues have any further questions. We'll give you some time back. Okay. Thank you, Your Honor. Thank you. Good morning. Good morning. May it please the Court. Elizabeth Gabriel on behalf of the United States. The district court here did not commit any plain procedural error. The court correctly calculated the guidelines range, did not rely on clearly erroneous information, and gave an adequate explanation of its sentence. She didn't say anything about an upward departure from the guidelines. That's devoid from the record. She didn't say, I'm departing upward from the guidelines because – and give us an explanation. Well – And Brown, we say you have to do that, right? You've got to explain to her why you're departing upward from the guidelines and how this particular defendant isn't, as your friend calls it, isn't the mind run of cases. That's completely lacking from this. Well, Your Honor, I – How does this survive Brown, I guess is my question. Well, this case is – I think it's distinguishable from Brown in one very important respect, and that is that here, this was not the first time the district court was sentencing a felon. It wasn't even the second time. This was the third time. Well, that's different from Brown because in Brown, the district court judge at least talked about giving some explanation for an upward departure. That's completely absent here. And there, we found his explanation insufficient. Here, we have no explanation. The problem in Brown was that the court didn't relate any of the 3553 factors to the defendant in that case, to his conduct. Here, we have the district court explaining – relying on his extensive, lengthy, horrible criminal history, the actual violations he committed, the fact that he continued to commit criminal offenses, the fact that he had failed to abide by the court's orders over this two-year period through which the court presided over his case, and the fact that his violations simply put the community at risk of danger. So the court did specifically link Appellant's conduct to the 3553 factors in a way that the court in Brown simply did not. Again, it's important to remember the context here, that this is coming after two separate revocations, previous revocations, two separate sentencings. This is now the third time that the court is seeing Appellant, and all of that history is what is supporting the court's sentence in this case. The court refers to that, refers to the fact that she's given him multiple opportunities, and he simply hasn't been able to comply with her orders. So I think that that's what distinguishes this case from many of the court's cases, where it's the first time a sentencing is taking place, or the first time a court is considering a defendant. Here, the court was very well aware, and in fact said she was very well aware. What do you do with the argument that she didn't seem to understand what had taken place and what hadn't taken place with the post-conviction treatment? I think there's absolutely nothing in the record to support that assertion. The court made no findings during its sentencing about treatment or training that Appellant had received. She asked the probation officer about drug treatment, certainly, but she didn't indicate anything to suggest that she misunderstood whether he had, in fact, received treatment or not. In fact, she referred to the probation officer's reports, which indicated that he had received treatment and training, and that for various reasons over time, either he didn't qualify for treatment, or he absconded and wasn't able to receive treatment for those reasons, or had committed new criminal offenses. So the court was well aware of this history. It was well aware of what the probation office had done for Appellant. And even if she had some misunderstanding, even if there were something in the record to support that, the court simply didn't rely on that in reaching a sentence. The court's explanation makes clear that she relied on other factors, other factors that outweighed any consideration of whether he had received treatment and training. Are there any studies about whether this therapy works? Suppose it doesn't. Suppose it really doesn't matter one way or the other, and there's no evidence to indicate otherwise. Then what's the point? So he didn't get therapy, but it wouldn't have changed anything anyway. I would hope that there are studies that indicate it does work because we continue to, and defense counsel continue to ask for it. I don't know whether it worked in this case. I think obviously Appellant continued to commit crimes, despite the fact that he had received anger management counseling, had been assessed for mental health and substance abuse issues. Obviously it didn't work here. That's not to say it couldn't have worked had he made himself more amenable to treatment. Remind me, what do we know about what treatment he actually received as opposed to what treatment he was supposed to receive? Was there some gap between those two? I don't think there was any gap. When he was at Hope Village, he participated in life skills training, substance abuse treatment, employment training. He participated in anger management counseling. And he was assessed. I think the gap perhaps is that he was assessed for mental health treatment, but was deemed not to require such treatment. So he didn't receive mental health treatment beyond the anger management counseling. But again, this was all before the district court. The court was well aware of this history and didn't suggest that she didn't understand what had happened. Can I ask you a question about the criminal history part of this? Yes. There's an error on the criminal history because of the inclusion of the attempt. Let's just say that there is. And then let's suppose, I know you have some other arguments about this, but let's just suppose that we're focused on the potential use of the armed robbery conviction. Yes. As resuscitating the criminal history to get us back to the same place. If that's what we're focused on, how does the government think it works in light of Johnson to take into account armed robbery when the vehicle through which that comes in is the residual clause in the guidelines? Well, Beckles held that the residual clause was not invalid. And so what we're looking at- That's the guidelines. I'm sorry? That's the guidelines. Yes. Under the advisory guidelines. Appellant here was sentenced under the advisory guidelines. And he was sentenced at a point when the residual clause was still in effect. And so when we're looking at whether or not the District of Colorado miscalculated his criminal history category, we have to look at the guidelines that were in effect at that time. The residual clause, there's no authority for the assertion that the residual clause was invalid at that time. And so- And then what do we do? So I take your point that under Beckles, the residual clause is still an operative thing under the guidelines, and we go back and look at it as if it were. And so then we need to decide how the armed robbery conviction fits into that. Right. I mean, I think, you know, if the question is would he- You know, if we recalculated his criminal history category today. Right. Clearly, you know, we wouldn't be relying on the residual clause because it's no longer there. So his armed robbery conviction wouldn't count in that respect. So perhaps today he would not be considered a career offender. But, you know, when we look at whether the District of Colorado erred, which is the crux of his- We have to look at the guidelines that were in effect at the time. Now, of course, you know, our position is that we don't look to that. And, in fact, the guidelines make clear that the criminal history category is not to be recalculated. So it certainly couldn't be plain error in this case. Right. So I'm assuming that issue away. Okay. So I'm just saying that the way that you get home on the criminal history is by use of the armed robbery conviction, and you get to do that because at that time the residual clause in the guidelines was there. Yes. And as to that, then, what do we do? So we have an armed robbery conviction. We have to decide how it fits under the residual clause at that time. And then you must be urging the conclusion that we think that armed robbery is a crime of violence for purposes of the residual clause back then. Yes. We think that armed robbery is a crime that presents a serious potential risk of physical injury. And we just look at it just like just generally what armed robbery is? Yes, Your Honor. I mean, we could go through the whole analysis. You know, I don't think that the court needs to reach that issue because here, an appellant can't meet his burden on prongs three and four of plain error in demonstrating that, you know, his substantial rights were prejudiced. So I think that's a thornier issue, and we're not, you know, we don't think the court needs to go there because, you know, we think it is so clear on this record that that one-month difference in the guidelines range wouldn't have made any difference at all to the court's ultimate conclusion. Okay. If there are no further questions, we would ask this court to affirm. Thank you very much. Thank you. I hope that I am able to make three points. Starting with Your Honor's questions about whether or not the residual clause would qualify, I will note that before Johnson was decided, the government itself did not defend the D.C. robbery, which is essentially indistinguishable from armed robbery because you could commit armed robbery without even brandishing a weapon. It's just mere possession. They did not defend the use of the residual clause in In Re Sealed Case, which is 548, 53D, 1085. They used only the elements clause in order to argue that D.C. robbery was a crime of violence. They did not resort to the residual clause. And that was before Beckles, and that's in this district. Second. Did you – did I misunderstand? Did you say there was no evidence that he had a weapon? No. Oh, okay. No. I also want to say that the government is relying on – and this is brief – but the government – everything that the government, as far as treatment is concerned, has cited to this court was provided by Hope Village, and that is not from multiple transcript references and the court's order itself. That is not the type of treatment that was ordered by this court. The court made several references to probation having to provide the services and that the very first offense, she actually gave the defendant more time because she wanted probation to set up outside programs, outside of Hope Village. Those do not count. Those in-house programs are not supervised in any way by probation. They are voluntary programs. He did not have to participate in them. They are not of the same quality, and they are, again, not supervised. Finally, I just want to say that the reasoning of the district court throughout the proceedings in sentencing Mr. Duckett is completely inconsistent with its 24-month sentence unless we assume that she didn't understand that he was not receiving the treatment. Every prior time that she saw Mr. Duckett, she made clear that it was in the public's best interest, not even just Mr. Duckett's, but the public's best interest that he receive treatment, and that, in fact, jail was not going to do anything to either help the public or help him. And the statement that she made at sentencing was essentially that she said, I've been persuaded to give you chances in the past to make better choices, make something of your life, and to do better. Sentencing him just to a lenient sentence does not help him to make better choices. It doesn't help him to do better absent treatment, training, things that she thought she had provided him. And probation made – implied that he was getting one-on-one treatment at a previous hearing, and the court asked the court – I think we have your argument. Thank you. No further questions from my colleagues. Thank you. The case is submitted.
judges: Griffith, Srinivasan, Randolph